[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO STRIKE
This action against the Connecticut National Bank (CNB), the Connecticut Bank Trust (CBT), and an individual defendant, David Kaplan, arises out of the defalcation by the plaintiffs' attorney, William M. Buzanoski, who is not a party to the suit. Since this is a motion to strike, the court's decision is based on the following facts and allegations as set forth in the plaintiffs' amended complaint, dated January 31, 1990.
In October 1985, the plaintiffs held a mortgage from defendant Kaplan on a cottage in Clinton. Following some negotiations for paying off the mortgage, the plaintiffs executed a release and forwarded it to their attorney, Buzanoski, to hold in escrow until he received payment from Kaplan. A few days later, a check was issued in Kaplan's behalf, payable to the plaintiffs, to pay off the mortgage. It was drawn on the defendant CBT and delivered to Buzanoski. In return, Buzanoski delivered the mortgage release to Kaplan. Buzanoski then forged the plaintiffs' signatures on the check and deposited it in his own account at the defendant CNB, which ultimately obtained payment on it from CBT. For the next three years, Buzanoski concealed his fraud in true Ponzi fashion by making monthly payments to the plaintiffs as though the mortgage were still in effect. In October 1988, the plaintiffs discovered that their signatures had been forged on the mortgage payoff check. On October 26, 1988, they contacted defendant CNB, and on October 27, they wrote both CNB and CBT to make them "aware of the forgery of our signatures" on the check. The banks made no response except that CNB orally informed the plaintiffs, according to their complaint, that "it would look into the matter."
The basis of all of the counts of the complaint which are aimed at the banks is that the banks had a duty "to at least inform the plaintiffs that they should seek legal counsel and that that counsel should be sought before November 4, CT Page 3422 1988," the date when the statute of limitations would bar legal action on the forgery. This is coupled with an allegation that the banks themselves failed to advise the plaintiffs about the statute. The defendant banks move to strike these counts on the basis that they fail to state a cause of action under Connecticut law. This court agrees.
Both parties cite Duksa v. Middletown, 173 Conn. 124
(1977) in support of their respective positions. That case adopted the principle that "[t]o constitute fraud on that ground [nondisclosure], there must be a failure to disclose known facts and, in addition thereto, a request or an occasion or a circumstance which imposes a duty to speak." Id., 127. (Emphasis added). In the present case, the plaintiffs allege no circumstances which created a duty on the part of either bank to inform them that the statute of limitations was about to run against them or that they should quickly retain an attorney before it did so. There is no allegation that there was any fiduciary relationship between either bank and the plaintiffs, as might arise, for instance, if the plaintiffs had been customers. The letters which the plaintiffs sent to the banks essentially demanded reimbursement of the amount of the check; there is nothing in the letters which could conceivably be interpreted as a request for information concerning their legal position. On the contrary, the letters made clear that the plaintiffs were potential adversaries. Even if the plaintiffs had asked the defendants directly about the statute of limitations, the banks would have had no duty to advise them, and, indeed, might have been prohibited from doing so. See State Bar Association of Conn. v. Conn. Bank Trust Co. et al; 145 Conn. 222, 235 (1958), wherein these same banks were defendants and the court held that "the practice of law is not a business in which a corporation may legally engage." Nor do the plaintiffs point to and circumstances which created a duty of the banks to advise them to retain an attorney before the statute expired. The fact that CNB told the plaintiffs it would investigate their complaint did not commit it to advising them that they had a limited time in which to pursue their remedy in court.
The first and fifth counts of the complaint are brought against CNB and CBT, respectively, on a theory of fraud. They may not be sustained for the reasons set forth above. The third and sixth counts allege violations of the Connecticut Unfair Trade Practices Act (CUTPA). Since the plaintiffs' underlying claims of fraudulent nondisclosure cannot be sustained, however, there is no basis on which to construct claims of CUTPA violations.
Finally, the seventh count alleges that CBT converted CT Page 3423 funds of the plaintiffs by "causing the plaintiffs' funds to be made available to Buzanoski." This was done by paying on the forged endorsement. That may constitute conversion. Conn. Gen. Stats. 42a-3-419 (1). Accordingly, the complaint alleges facts sufficient to state a cause of action in conversion against CBT.
For all of the above reasons, the defendant banks' motion to strike the first, third, fifth, and sixth counts is granted. Defendant CBT's motion to strike the seventh count is denied.
MALONEY, J.